FREDERICK P. ALLEN, as Assignee, etc., Appellant, v. ISAAC McCONIHE, Respondent.

In an action to recover a balance claimed to be due upon the purchase and sale by O., C. & Co., plaintiff's assignors, for defendant, of stocks purchased and carried upon margins, it appeared that in filling defendant's orders, O., C. & Co, made its purchases and sales, without his knowledge, through brokers in New York, who did not know that defendant was interested in the transaction, but who bought and paid for the stock ordered and carried them on margins for O., C. & Co. On August fifteenth, defendant directed O., C. & Co. to sell certain shares of stock so purchased for him at a price stated; this price could have been obtained until August twentieth, when the stock went down. O., C. & Co. neglected to sell as directed and did not notify defendant of such neglect until August twenty-ninth. On October seven, O., C. & Co. made a general assignment to plaintiff for the benefit of creditors; the brokers in New York sold the stock carried for defendant without his knowledge; he was not at that time in default to O., C. & Co. The referee found that defendant never assented to, waived or acquiesced in the failure of O., C. & Co. to sell as directed, and allowed him as damages the difference between the price at which he ordered the sale and the price at which said stock was sold. *Held*, no error; that defendant was not required, when he learned that his instructions to sell had not been executed, to notify O., C. & Co. that he abandoned all claim to the stock and held them responsible for its value; nor was he under any obligation, in order to protect his defaulting agents, to pay the purchase-price, take the certificates and sell them; and that the correct rule of damages was adopted.

*Whelan* v. *Lynch* (65 Barb. 326; 60 N. Y. 469), distinguished

(Argued February 2, 1891; decided February 24, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 23, 1890, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to recover a balance claimed to be due on an account arising on the purchase and sales of stocks by plaintiff's assignors for defendant.

From May 1, 1883, to October 7, 1887, G. Parish Ogden, John F. Calder and Gouverneur Ogden were partners under the name of Ogden, Calder & Co., doing business as stock

brokers at Troy, N. Y. · During this period the firm had been accustomed to accept the orders of the defendant for the purchase and sale on the New York Exchange of stocks and bonds. The purchases were always made and carried on margins usually equal to ten per cent of their market value. The firm had no connection with the stock exchange, but made its purchases and sales through Work, Strong & Co., brokers, in the city of New York, who bought and paid for the stocks ordered and carried them on margins for Ogden, Calder & Co. The New York brokers did not know the defendant, or that he was interested in any of the transactions, and he was not informed that the stocks ordered purchased by him were not paid for by Ogden, Calder & Co., but were carried by the New York brokers on margins and held as security for whatever might be due them on general account from the Troy firm. About May 31, 1887, Ogden, Calder & Co. delivered to the defendant a statement of the account between them made up to that date, which showed the amount due from him to them, and that they held for him, among other securities, 600 shares of Manhattan Consolidated stock. On the 15th of August, 1887, the defendant directed Ogden, Calder & Co. to sell 300 of the Manhattan shares for $111 per share. The shares could have been sold for that price at any time between August fifteenth and twentieth, when they fell in the market and did not again sell for as much until after October eleventh of that year. Ogden, Calder & Co. neglected to sell as directed and did not notify the defendant of their neglect until August 29, 1887. On the thirty-first of that month Ogden, Calder & Co. rendered a statement to the defendant showing the securities purchased by them for him, the amount due them on account, and that they had sold, on the twenty-ninth of the same month (pursuant to his direction given on that date), 100 Manhattan shares for $109.75 each, and had on hand 500 shares.

The referee found that the defendant never assented to, waived or acquiesced in the failure of the firm to sell as directed.

October seventh, Ogden, Calder & Co. made a general assignment for the benefit of creditors to the plaintiff. And on the tenth, eleventh, and thirteenth of that month, Work, Strong & Co. sold the 500 Manhattan shares at ninety-seven dollars each, and credited the avails to Ogden, Calder & Co., whose assignee in turn credited them to defendant.

This sale was made without the knowledge of defendant, and he was not at that time in default with the Troy firm. January 31, 1888, the plaintiff rendered an account to the defendant showing that $8,841.86 was due from him, which the referee found to be correct, less $4,200, the difference between the price of 300 Manhattan shares at $111 and ninety-seven dollars, with interest from August 16, 1887, which was allowed the defendant, and judgment was ordered for plaintiff for the remainder.

*Geo. B. Wellington* for appellant. The referee erred in charging Ogden, Calder & Co. as purchasers of the shares at 111. (*Whelan* v. *Lynch,* 60 N. Y. 469; *Wright* v. *Bank of Metropolis,* 110 id. 247; *Baker* v. *Drake,* 53 id. 211; *Hamilton* v. *McPherson,* 28 id. 72.)

*J. K. Long* for respondent. The appellant has no right to maintain this appeal. His appeal to the General Term was only from that part of the judgment of the trial court which allowed the defendant's counter-claim. (Code Civ. Pro. § 1337; *Kelsey* v. *Western,* 2 N. Y. 600; *Robertson* v. *Bullion,* 11 id. 243; *Derleff* v. *DeGraff,* 104 id. 661; *Bennett* v. *Van Syckle,* 18 id. 480; *Knapp* v. *Brown,* 45 id. 209; *Roosevelt* v. *Linkert,* 67 id. 447; *In re N. Y. C. & H. R. R. R. Co.,* 60 id. 112; *Hooper* v. *Beecher,* 109 id. 610; *Murphy* v. *Spaulding,* 46 id. 556; *Genet* v. *Davenport,* 60 id. 197; *Wolstenholme* v. *W. F. M. Co.,* 64 id. 272; *Carll* v. *Oakley,* 97 id. 633; *Goodsell* v. *W. U. T. Co.,* 109 id. 147; *Porter* v. *Smith,* 35 Hun, 119; *Halpin* v. *P. Ins. Co.,* 118 N. Y. 171; Code Civ. Pro. §§ 993, 994; *Healy* v. *Clark,* 120 N. Y. 642; *Caswell* v. *Davis,* 58 id. 228; *Stewart* v. *Morss,* 79 id. 629;

*Thomson* v. *Bank of B. N. A.*, 82 id. 7; *Burnap* v. *N. Bank*, 96 id. 131; *Andrews* v. *Raymond*, 58 id. 676.)   There is ample evidence in the case to sustain every finding of fact that has been excepted to, and when this is so and the General Term has affirmed the findings of the referee, this court has no power to review or disturb them.   They are conclusive on appeal.   ( *Van Gelder* v. *Van Gelder*, 77 N. Y. 448; *Reynolds* v. *Robinson*, 82 id. 106; *In re Ross*, 87 id. 514; *Sherwood* v. *Hauser*, 94 id. 626; *Baird* v. *Mayor, etc.*, 96 id. 567; *Baldwin* v. *Doying*, 114 id. 454; *Hale* v. *B. L. Ins. Co.*, 120 id. 297; *Derham* v. *Lee*, 87 id. 605.)   On his argument in the General Term, the appellant sought to induce the court to grant a new trial on the counter-claim on the ground that his recovery should have been increased by adding to the $8,841.76 balance claimed by him in his complaint the $200 which Ogden, Calder & Co. credit in their bill of particulars, September 1, 1887, and $450 of the $750 they credit therein as dividends October 1, 1887.   This the court properly refused to do.   ( *Whitehead* v. *Kennedy*, 69 N. Y. 469; *S. O. Co.* v. *A. Ins. Co.*, 79 id. 510; *People* v. *M. M. P. Union*, 118 id. 109; *Salisbury* v. *Howe*, 87 id. 128; *Thayer* v. *Marsh*, 75 id. 342; *Adams* v. *I. N. Bank*, 116 id. 614; *Everson* v. *City of Syracuse*, 100 id. 578; *E. C. F. Co.* v. *Hersee*, 103 id. 25; *Thomson* v. *Bank of B. N. A.*, 82 id. 7; *Burnap* v. *N. Bank*, 96 id. 131.)   In reviewing judgments rendered upon a trial before a court or referee, it is the duty of the appellate court to indulge in all reasonable presumptions in support of the judgment, and to assume when necessary that all the evidence in the case was considered, and a conclusion thereon, adverse to the appealing party, reached.   (*Day* v. *Town of New Lots*, 107 N. Y. 148, 157; *Berdell* v. *Allen*, 116 id. 661; *Bishop* v. *Vil. of Goshen*, 120 id. 341; *Reese* v. *Boese*, 94 id. 623.)   The burden of showing error is upon the appellant, and while this court will not look into the evidence to supply a fact not found, to overthrow the judgment, it may and will look into the evidence to supply a fact not found if that be necessary to sustain the judgment.   (*E. C. F. Co.* v.

*Hersee*, 103 N. Y. 25 ; *Everson* v. *City of Syracuse*, 100 id. 578 ; *Tracey* v. *Altmyer*, 46 id. 604 ; *West* v. *Van Tuyl*, 119 id. 620 ; *Costigan* v. *M. & H. R. R. Co.*, 2 Den. 609 ; *Howard* v. *Daly*, 61 N. Y. 371.) The defendant was not bound, as matter of law, to reiterate his order when he first learned it had been disobeyed, or at any time thereafter. (*Markham* v. *Jaudon*, 41 N. Y. 239 ; *White* v. *Smith*, 54 id. 526 ; *Levy* v. *Laub*, 85 id. 372 ; *Gillett* v. *Whiting*, 120 id. 402 ; *Gruman* v. *Smith*, 81 id. 25, 28 ; *Stenton* v. *Jerome*, 54 id. 483 ; *Scott* v. *Rogers*, 31 id. 678 ; *Baker* v. *Drake*, 53 id. 211 ; *Capron* v. *Thompson*, 86 id. 418 ; Sedg. on Dam. [6th ed.] 101, 402 ; S. & R. on Neg. §§ 31–38 ; *Hearey* v. *Hennen*, 2 Den. 627.) The referee was right in allowing a credit for the 300 shares of Manhattan at $111 per share, the price at which it could have been sold had Ogden, Calder & Co. obeyed the defendant's order, instead of at ninety-seven dollars per share, at which price, after the assignment and unknown to the defendant, it was sold by Work, Strong & Co. on account of Ogden, Calder & Co., because that firm had failed. (*White* v. *Smith*, 54 N. Y. 527 ; *Norton* v. *Squires*, 16 Johns. 225 ; *Stearns* v. *Marsh*, 4 Den. 231 ; *Allen* v. *Brown*, 44 N. Y. 232; *Hope* v. *Lawrence*, 50 Barb. 265.) Besides the relation of principal and agent, there existed in this case between Ogden, Calder & Co. and the defendant, the relation of pledgor and pledgee, as between them they held his stocks in pledge as security for their account against him. (*Markham* v. *Jaudon*, 41 N. Y. 239 ; *Gruman* v. *Smith*, 81 id. 25 ; *Gillett* v. *Whiting*, 120 id. 402 ; *Norton* v. *Squires*, 16 Johns. 225 ; *Stearns* v. *Marsh*, 4 Den. 231 ; *Allen* v. *Brown*, 44 N. Y. 232 ; *Hope* v. *Lawrence*, 50 Barb. 265.) There would be neither justice nor right in granting the plaintiff a new trial. The parties cannot be remitted to their original position. (*Snyder* v. *Snyder*, 96 N. Y. 88 ; *In re Holbrook*, 99 id. 543.)

FOLLETT, Ch. J. Ogden, Calder & Co. undertook upon a sufficient consideration by way of commissions paid and margins furnished and to be furnished by the defendant, to carry

the shares and sell them as directed or deliver to him certificates for them on payment of their purchase-price. This promise the plaintiff admits that his assignors broke by refusing to sell three hundred shares for $111 each on the 15th of August, 1887, as directed, and in permitting Work, Strong & Co. to sell them in October following for $97 each on account of an indebtedness owing them by Ogden, Calder & Co.

The referee allowed the defendant as damages for the breach of this promise $14 per share, the difference between the price at which they should have been sold August fifteenth and the price at which they were sold in October.

The general rule for determining the amount of damages recoverable for the violation of a contract or the breach of a duty, is that the injured party is entitled to such as are the natural (or to be apprehended) direct and immediate results of the breach. (*Griffin* v. *Colver*, 16 N. Y. 489; *Hamilton* v. *McPherson*, 28 id. 72; *Hadley* v. *Baxendale*, 9 Exch. 341; May. Dam. 10.)

This rule is subject to the qualification that if the person injured thereafter negligently suffers his loss to be enhanced, the increase so occasioned cannot be recovered from the person who first violated his contract or duty and in some cases it is incumbent on the person damnified to take such active measures as he reasonably may to minimize the damages naturally flowing from the breach. (*Hamilton* v. *McPherson*, 28 N. Y. 72; *Johnson* v. *Meeker*, 96 id. 93–97; 1 Suth. Dam. 148; 1 Sedg. Dam. [7th ed.] 56; May. Dam. 86.)

These rules are not questioned by the learned counsel for the plaintiff nor does he deny that the damages recovered were the natural, direct and immediate result of the failure of Ogden, Calder & Co. to sell the shares on the fifteenth of August as directed and of their assignee's permitting them to be sold in October following but he contends that the defendant was not entitled to this measure of damages because when he learned on the twenty-eighth day of August that his instructions to sell had not been executed, he did not notify Ogden, Calder & Co. that he abandoned all claim to the shares and held them respon-

sible for their value, and cites as authority for his position *Whelan* v. *Lynch* (65 Barb. 326; 60 N. Y. 469).

In the case cited the plaintiff consigned wool to the defendant for sale, and on the 26th of October, 1864, directed its sale at the market rate which instruction the defendant disregarded, and on the twenty-fourth of April following the plaintiff gave the defendant this notice : " In as much as you failed to sell my wool when you received orders to do so, you can do with it as you please; I withdraw from the matter and look to you."

In April, 1867, an action was begun to recover the value of the wool (it not having then been sold) and it was held that its market-price when the order to sell was given or in a reasonable time thereafter for effecting a sale was the measure of damages.    In that case the plaintiff sought to recover the full value of the wool, the title to which was originally in him, and not the difference between the price on the different dates. .

In the case at bar the defendant never held the legal title to this stock, and there was no way in which he could sell it, except through his brokers, without paying its purchase-price, taking the certificates and then selling them, which he was under no obligation to do for the protection of his defaulting agents.    The shares were held by Work, Strong & Co. as security for any indebtedness of Ogden, Calder & Co. to them, and the latter firm had the legal right to sell the shares at any time after August fifteenth, and before the former firm exercised their right to sell them for their own security.    Had the defendant's agents exercised their right they would have avoided the loss occasioned by the further decline.    This is not a case of the failure of an agent to obey a direction to sell shares or chattels, the legal title to which is then, and, after notice of the agent's neglect to sell, remains in the principal, in which case the latter should either sell the property within a reasonable time or permit his agent to sell so as to render the loss as slight as possible.

The learned referee adopted the correct rule of damages. It appears from the plaintiff's bill of particulars and from the evidence that October 1, 1887, the defendant was credited

by Ogden, Calder & Co. with $750 dividends received on five hundred Manhattan shares, three-fifths of which ($450), it is said by counsel, arose from the shares in dispute, and it is urged that if the plaintiff is chargeable with the shares at $111 each as of August 16, 1887, he is entitled to all dividends thereafter declared. This is quite apparent, but the difficulty of correcting the supposed error in this court is in the rule which forbids it to look into the evidence for errors or reasons (not pointed out by a request or an exception) for modifying or reversing a judgment, and the referee not having found that this credit arose in part from a dividend on the disputed shares, and not having been asked so to find, the alleged error, if any there be, cannot be here corrected. For the same reason we cannot modify the judgment by allowing the plaintiff $56.25, which he asserts should be allowed him as the usual commissions for selling the shares if he is to be charged with their value.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.