CLEMENT, BANE & COMPANY, Appellant, v. DRYBREAD.

108  701
120  181

**Contracts: UNCERTAINTY.** Contract for the sale of goods whereby payment is to be made solely out of the buyer's profits, who is to sell for cash, deduct certain expenses, render stated accounts showing sales and remit to the seller each week all money taken in over and above the authorized deductions and once a year to furnish a complete inventory, is not void for uncertainty.

**BURDEN OF PROOF.** The burden is upon the buyer of goods under a contract providing for payment out of the profits alone but requiring him to make periodical remittances of the proceeds of sales, to show that he had nothing to remit, where the seller insists that the terms of payment in the contract have ceased to be binding by his failure to make weekly remittances and that the indebtedness has become due and payable.

**Construction: CONTRACTS:** *Court and Jury.* The construction of a written contract is for the court and not for the jury and, if evidence as to the circumstances has been admitted to aid in its interpretation, the court should give the jury the meaning of the writing upon the various hypotheses presented by the evidence.

**SAME.** It is for the court to determine the meaning of an ambiguous written contract, in the light of parol evidence admitted to explain it.

**RULE APPLIED.** Defendant sent a note payable to plaintiff in response to plaintiff's letter stating that he desired to use it in his bank, and that he would credit it on defendant's cash account, and would take care of it when due. *Held*, in an action on the note, that the letter constituted a written contract, the ambiguity in which could be explained by parol evidence as to the status of the parties when the note was executed, and hence it might be shown whether defendant was then owing plaintiff.

**SAME.** But evidence of plaintiff's declaration that the note was to be used by him only as collateral was not admissible.

**SAME.** Defendant's statement to a third person, in plaintiff's absence, before executing the note sued on, expressive of his reluctance is inadmissible, though the statement was communicated to plaintiff who replied that the note was to be used only as collateral.

**SAME.** It was error to fail to charge that an original contract under which plaintiff and defendant began business should not be considered as affecting the terms of the notes sued on, where the contract was admitted on an issue as to the validity of an account sued on in the same action

**Exceptions.** The words "Given, Plaintiff excepts, Q , Judge," marked on instructions when the charge was given, show sufficient exception to the giving of the instructions.

SAME. A case is reviewable on appeal, though no exception was taken to the judgment, where exception was taken to the conclusion of law on which the judgment is founded.

SAME. A judgment entry worded, "judgment is rendered &ast; &ast; &ast; against plaintiff for $1,400, &ast; &ast; &ast; and plaintiff excepts. It is therefore ordered, &ast; &ast; &ast; that the defendant &ast; &ast; &ast; recover &ast; &ast; &ast; judgment for &ast; &ast; &ast; $1,400," shows that plaintiff excepted to the judgment.

**Appeal:** REVIEW: *Motion for new trial.* Exceptions to rulings on evidence shown by the abstract to have been taken at the time the charge was given are sufficient, without a motion for a new trial, to entitle appellant to a hearing on such rulings, in the supreme court.

*Appeal from Palo Alto District Court.* —HON. W. B. QUARTON, Judge.

WEDNESDAY, FEBRUARY 1, 1899.

ACTION at law, aided by attachment, on two promissory notes and an account. Defendant filed an answer and counterclaim. There was a trial to jury, verdict for defendant on his counterclaim, and, from a judgment rendered thereon, plaintiff appeals.—*Reversed.*

*John Menzies, W. L. Crissman,* and *E. A. Morling* for appellant.

*B. E. Kelley* and *Clarke & Cohenour* for appellee.

WATERMAN, J.—While many of the facts were controverted below they are practically conceded so far as the questions presented on this appeal are concerned. Plaintiff firm was engaged in the wholesale clothing business in the city of Chicago. Defendant was a retailer in the same line, at Emmetsburg, in this state. Defendant started in business at Emmetsburg at the solicitation of plaintiff, and under a contract with it, which was partly written and

partly oral.  The oral portion of the contract, as defendant claims it, was substantially as follows:  Plaintiff was to furnish defendant all the clothing and other goods belonging to such a stock, necessary to start him in the retail business, at the usual wholesale, and current prices and thereafter was to supply such goods as defendant needed to keep up his stock.  If plaintiff had not the required goods in its own stock, it was to pay for them when purchased by defendant of others.  Defendant was to pay for all such goods to plaintiff by remitting the profits of his business, over and above actual running expenses, including fifteen dollars per week for his own personal use.  Plaintiff was to carry all bills until such time as defendant could make payment therefor out of the profits of the business, payment being required only in case profits were made.  The obligations of defendant under this contract were in writing.  It is not material to any issue on this appeal that they be set out in full.  Something will be said of them hereafter.

I.  This controversy had its immediate origin in the following transactions:  On the date therein mentioned, plaintiff wrote defendant as follows:  "Chicago, Ill., April 22, 1896.  G. W. Drybread, Emmetsburg, Iowa—Dear Sir: We have occasion to use some of our customers' paper in our banks, and we would like to have you sign and send us the inclosed notes, as follows:  April 15th, 3 months, $2183.17; April 15th, 4 months, $1,816.83.  We will credit these up to your cash account as same date as the notes, so it will make no difference to you; and, of course, we will take care of them when due, or whatever part of them is, unpaid. Kindly attend to the matter promptly, and much oblige, yours, very truly, [signed] Clement, Bane & Company."

Defendant, in response, executed and sent the notes requested.  Thereafter plaintiff sent this letter:

"Chicago, Ill., October 13, 1896.  G. W. Drybread, Emmetsburg, Iowa—Dear Sir:  Please sign and send us the inclosed notes as follows:  October 15th, 30 days, $1,657.00;.

October 15th, 60 days, $2,343.00. With check for $160 to take up your two notes dated April 15th, amounting to $4,000 to cover the interest on same, and bring the matter forward on our books, and give us the paper in shape so we can use it. Kindly attend to the matter promptly, and oblige, yours, very truly, [signed] Clement Bane & Company." Again defendant complied, and sent the notes asked for. The first notes given were taken up and canceled by plaintiff, and it is upon these last obligations, with some items of account, that plaintiff's claim is founded.

II.    The defense is that nothing was due plaintiff under the contract at the time the notes were executed; that they were given solely for plaintiff's accommodation, and were by it to be taken care of when due; and that, therefore, they were without consideration. The principal question for determination is whether the terms of the prior oral contract can be considered, either for the purpose of altering the terms of the notes or to show that they were without consideration. Some other matters are discussed, and very many others are suggested in argument. We shall notice all such as we deem material, in the course of what we have to say.

III.    Before proceeding to the merits of the case, it is necessary that we dispose of some questions pertaining to the record, which are presented by appellee.

Plaintiff objected to the evidence offered to establish the prior agreement and negotiations leading up to the giving of the notes, and also claims to have excepted to the instructions in which the jury was told that such matters should be considered. It is charged by appellee that the instructions were excepted to en masse, in the motion for a new trial, and that the assignments of error based thereon cannot be considered, if any of the challenged instructions are good, as some unquestionably are, a motion for a new trial is not necessary to secure a review, in this court, of exceptions that have otherwise been properly preserved. Code 1873, section 3169; *Hunt v. Railway Co.,* 86 Iowa 15, and cases cited.

The objections to the testimony are all properly saved here, and each of the instructions complained of was marked as follows: "Given. Plaintiff excepts. W. B. Quarton, Judge." These exceptions, the abstract recites, were taken at the time the charge was given. This, we think, is sufficient to entitle plaintiff to a hearing of these matters, if the motion for a new trial is entirely disregarded. *Kellow v. Railway Co.,* 68 Iowa, 470.

Again, it is said that the judgment below was not excepted to, and therefore the case is not subject to review by this court. An exception to the judgment is not necessary where it has been taken to the conclusion of law upon which the judgment is founded. *Haefer v. Mullison,* 90 Iowa, 372, and cases cited. The order of the court overruling the motion for a new trial was duly excepted to in the case at bar, and exceptions to the admission of testimony and to the giving of instructions, as we have already seen, were properly preserved. This was sufficient. *Jordan v. Kavanaugh,* 63 Iowa, 153. Moreover, we think that proper exceptions were taken to the judgment. We set out such portion of the entry as will show upon what we found this belief: "And thereupon judgment is rendered by the court upon the verdict of the jury in favor of defendant, and against plaintiff, for $1,400 and costs, including attorney's fees for $300, *and plaintiff excepts.* It is therefore ordered and adjudged that the defendant, G. W. Drybread, have and recover of and from the plaintiff, Clement, Bane & Co., judgment for the sum of $1,400, and the costs of this action, taxed at the sum of $551.45." The exception, which we have italicized, seems to be clearly to the judgment, although it is not the conclusion of the entry.

Some objections are made to the assignments of error. We deem it sufficient to say that they are specific enough to present the question discussed.

IV. This brings us to the merits of the case. The issues presented were raised in different ways,—by motion

to strike from the answer, objections to testimony, and exceptions to instructions. The main question discussed however, is as stated. It is insisted by appellant that no evidence of the original contract should have been received or allowed any weight in determining the rights of the parties with relation to the notes in suit. Many cases are cited in support of the proposition that parol evidence of a contemporaneous oral contract is not competent to alter the terms of a promissory note or to show want of consideration, when the maker, as here, is admittedly indebted to the payee, though the debt may not be due when the notes are given. See, among other authorities, *De Long v. Lee,* 73 Iowa, 53; *Dickson v. Harris,* 60 Iowa, 727; *Farmer v. Perry,* 70 Iowa, 358. The defendant does not take issue with the rule announced in these cases, but he asserts that it has no application here, for the reason that the notes sued upon were but renewals of the first two given, and that the letters from plaintiff which we have set out, together with the notes, constituted a written contract, which should be construed in the light of the situation of the parties at the time of the transaction. The writings being somewhat ambiguous, we concede this legal proposition, and hold that any evidence was admissible which tended to show the status of the parties at the time the notes were given; that is, whether defendant was then owing plaintiff anything, which was due and payable. The trial court, however, went far beyond this. We select but a single instance to illustrate our meaning.

Defendant was allowed to testify as to what he told one Nichols, prior to the execution of the notes, of his reluctance about giving them; and evidence was received to show that what was said to Nichols was carried to plaintiff, and that the latter asserted the notes were to be used only as collateral. This was clearly incompetent. The limit to which parol evidence could properly go, as we have already said, was to show the circumstances and situation of the parties at the time of the execution of the

written contract, in order to aid in giving the writing a correct interpretation. See Greenleaf Evidence, section 277; *Grimes v. Centenary College,* 42 Iowa, 589. Furthermore, it was improper to admit what was said to Nichols. The statement was not made in the presence of any member of plaintiff firm. Nichols was not even in its direct employ. So, even if the subject-matter were not objectionable, the evidence should not have been received.

Testimony was admitted of various other matters relating to the conduct of the business by defendant, and to communications between him and plaintiff that had no bearing on the question of the liability on the notes. It would not be profitable to set the matters out in detail. The general rule which we have stated is sufficient to indicate the course to be pursued on another trial.

V. In the seventh instruction given by the court it is left to the jury to determine what the contract was between the parties when the notes were given. The contract being in writing, it was for the court to construe and determine it. The facts, so far as they were in dispute, with relation to the circumstances of the parties, were for the jury to find. But it was for the court to give the jury the meaning of the writing upon the various hypotheses presented by the evidence. What a contract means is always a question of law. When an agreement is in writing, it is the exclusive province of the court to construe it. *Rohrabacher v. Ware,* 37 Iowa, 85; *Daly v. W. W. Kimball Co.,* 67 Iowa, 132; *Vaughn v. Smith,* 58 Iowa, 558. We think the trial court erred in the respect mentioned, in this instruction. No part of the agreement made at the time these notes were given was in parol, so that the rule announced in *Peterson v. Railway Co.,* 80 Iowa, 96, does not apply.

VI. Two items of account were also included in plaintiff's demand, and it is urged on the part of appellee that the terms of the original contract under which defendant began business should govern as to these matters, and that the evi-

dence of the agreement was for this reason properly received. This may be, but the fact affords no justification for the court sending the case to the jury on the theory that the terms of the notes could be directly affected thereby. The instructions should have clearly distinguished between the notes and the account, and limited the jury, with relation to the former, to a consideration of the oral evidence, for the purpose only of finding whether defendant owed plaintiff anything which was due when the notes were given. Appellant claims that the original contract, if made as alleged by defendant, is void for uncertainty. We are not prepared to so hold. The authorities cited to sustain this contention do not seem to be in point. Plaintiff had a right to give defendant its goods on any terms it saw fit. Payment was to be made out of defendant's profits only. He was to sell for cash, and deduct certain expenses, render stated accounts showing sales, etc., and remit to plaintiff each week all money taken in, over, and above the authorized deductions, and once a year furnish a complete inventory. This is according to defendant's contention. Plaintiff was thus to be kept informed as to the condition of defendant's business, the amount of his profits, and was to have possession and control of the cash. Knowing the cost price of the goods and the amount of the expenses, plaintiff would have knowledge of the exact profits, and could credit the same from time to time on defendant's account.

VII. It is said, however, by appellant, that there was testimony introduced on its part tending to show that defendant failed to comply with the terms of the contract, and therefore it ceased to be binding on plaintiff, and the indebtedness from defendant became due and payable. The trial court was asked to give an instruction, informing the jury as to the legal effect of a breach of the agreement on defendant's part. There was evidence tending to show that after the 1st day of December, 1896, defendant rendered no statements and made no remittances to plaintiff,

,although his contract called for him to do so each week. To this counsel respond that there is no showing that defendant had anything to remit after December 1st. This, we think, is not a sufficient answer. It does not appear but that he did have something, and the burden was on him to excuse his apparent default. At any rate, there is evidence that tends to show that he was in default in not making weekly statements of sales, as called for under his contract. The effect of this conduct should have been stated to the jury. It is fairly set forth in the ninth instruction asked by plaintiff, which the court declined to give.

VIII.   Many errors are assigned upon the admission and rejection of testimony. None of a serious character, other than what we have already noticed, are likely to again arise. We may say, however, that we think more latitude should have been allowed in the cross-examination of defendant, as to the value of his time lost by reason of the levy of the writ of attachment. For the reasons given, the judgment is REVERSED.